This is a breach of contract action.
On February 5, 1981 Lynneice Taylor Rutledge filed suit against Health Maintenance Group of Birmingham (HMG) to recover expenses incurred when her son, Paris, received surgery and treatment at Children's Hospital in Birmingham, Alabama.
A jury trial was held on July 25, 1983. At the close of plaintiff's case, HMG filed a motion for a directed verdict and reasserted its motion for directed verdict at the close of all the evidence in the case. The trial court denied both motions and refused to grant any of HMG's requested jury instructions.
The jury returned a verdict in favor of plaintiff and against defendant in the amount of $6,457.06. HMG filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Denied. HMG appeals.
HMG argues here that the trial court erred in denying its motions for directed verdict and in refusing to grant its requested jury charges. We consider the failure to properly charge the jury dispositive of this appeal and we will focus on that aspect of the case. *Page 891 
The evidence shows that plaintiff was employed at Eastside Mental Health Center in Birmingham. She was enrolled in a prepaid group health insurance program offered by HMG that provided for medical, surgical, and hospital care to insureds and members of their family at Lloyd Noland Hospital (LNF). Under certain limited circumstances HMG provides its members with reimbursement and payment for services rendered at a medical facility other than Lloyd Noland Hospital. One such circumstance concerns "emergency service." Specifically, the HMG contract (policy) provides that:
 "3. Emergency Service. If a Member requires Emergency Service and his health would be endangered
were Emergency Service delayed until it could be provided at the LNF Hospital or LNF Clinic, he shall be entitled to payment to the Physician of the Reasonable and Customary Fee for Emergency Medical Service rendered to him.
". . .
 "(b) If the Member is admitted to a Participating Hospital, he is entitled to coverage for the same Hospital Services he would have received in the LNF Hospital.
". . .
 "(d) The benefits of this Paragraph 3 are subject to the following conditions:
". . .
 "(3) Approval by LNF and HMG. Each case of Emergency Service shall be reviewed and approved or disapproved by both LNF and HMG. HMG's decision shall be final." (Emphasis added.)
The HMG contract defines "Emergency Service" as follows:
 "9. `Emergency Service' means Hospital Service, Medical Service, or service in the outpatient department of a Hospital which is required unexpectedly and immediately because of an Accidental Bodily Injury or emergency illness at a place and under circumstances precluding a Member from obtaining such service from the LNF Hospital, the LNF Clinic, and/or LNF Physicians." (Emphasis added.)
On June 6, 1980 Paris Taylor, plaintiff's two year old son, was severely burned when the stove in plaintiff's apartment collapsed, spilling boiling water on his back. Plaintiff took Paris to the emergency room at Baptist Hospital-Princeton in Birmingham, but was referred to the emergency room at Children's Hospital in Birmingham. Paris was treated by Dr. Pitts in the children's burn unit for second degree burns and was released from the hospital on June 24, 1980.
Plaintiff subsequently filed a claim with HMG for Paris's hospitalization and attendant services. HMG paid the claim.
Following Paris's discharge from the hospital, plaintiff returned to Children's Hospital every two days with Paris so that the burn could be scrubbed down, soaked, and rebandaged. She was informed by an HMG employee that "follow-up [care] should be handled by LNF," and that HMG would not guarantee coverage for the care at Children's Hospital unless it was established that LNF could not furnish the same care. On July 7, 1980 plaintiff took Paris to LNF for follow-up treatment. The examining physician changed Paris's bandage and they left.
On July 9, 1980 plaintiff returned with Paris to Children's Hospital. Paris was sick, whining, and not eating. He was restless and his bandages were soiled. There was a ten by ten centimeter area on Paris's back where he had scratched and rubbed the skin healing over the burned area. He was admitted to the hospital and was scrubbed down and rebandaged. His arms were put in slings so that he could not scratch his back.
There was testimony that Paris could have been moved to another hospital and that "a few hours wouldn't make much difference." There was also evidence that LNF could have rendered the care to Paris.
On July 14, 1980 a skin graft was performed on Paris at Children's Hospital. *Page 892 
He was subsequently released from the hospital on July 30, 1980.
Plaintiff sent HMG a claim for Paris's second hospitalization and surgery. HMG refused to pay the claim and plaintiff filed suit against HMG seeking payment.
The issue in this case is whether the trial court erred to reversal in failing to charge the jury that under a satisfaction contract, plaintiff could only recover if HMG's denial of payment for Paris's second admission was not made in good faith and was arbitrary or capricious.
We note that a satisfaction contract is a contract in which a promissor obligates himself to perform only upon performance by the other party to the promissor's satisfaction. 17 Am.Jur.2dContracts § 366 (1964). In the case at bar, HMG's approval was required before it would pay a claim for services rendered at a hospital other than LNF. Thus, it was obligated to perform only if it was satisfied that services rendered at a hospital other than LNF were of an emergency nature. For similar cases seeManufacturers' Finance Acceptance Corp. v. Woods, 222 Ala. 329,132 So. 611 (1930); McDennis v. Finch, 197 Ala. 76, 72 So. 352
(1916); Norwood Hospital v. Howton, 32 Ala. App. 375,26 So.2d 427 (Ala.Ct.App. 1946).
And, it is a rule of law in satisfaction contracts that a promissor must exercise good faith in its determination of whether it is satisfied and will perform under the contract.Shelton v. Shelton, 238 Ala. 489, 192 So. 55 (1939); Utley v.Stevens, 221 Ala. 666, 130 So. 405 (1930); McDennis v. Finch,supra; Electric Lighting Co. of Mobile v. Elder Brothers,115 Ala. 138, 21 So. 983 (1897). Moreover, whether in fact good faith has been exercised is a question for the jury. Kern v.Friedrich, 220 Ala. 581, 126 So. 857 (1930); Worthington Co.v. Gwin, 119 Ala. 44, 24 So. 739 (1898).
The record reveals in the instant case that the trial judge denied all the charges requested by HMG. Various of these charges dealt with the good faith of HMG in denying plaintiff's second claim. HMG argues the trial court's failure to instruct the jury as to its good faith amounted to reversible error. We agree.
The trial judge has the duty to instruct the jury on the law applicable to the case. Raines v. Williams, 397 So.2d 86 (Ala. 1981). Each party is entitled to have proper instructions given the jury regarding the issues presented. Failure to give a correct jury charge as to any theory of the case to which a proper objection is made is reversible error. Liberty NationalLife Insurance Co. v. Smith, 356 So.2d 646 (Ala. 1978).
In the case sub judice the trial court refused to instruct the jury that, in order to find for the plaintiff, they must be satisfied that HMG had not exercised good faith in determining that Paris's second admission was not an emergency within the terms of the contract. Such refusal is error and requires reversal of the judgment.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.